Louis E. KROLL and Helen M.
Kroll, Petitioners,

v.

UNITED STATES of America and Donald
A. Kempf, Internal Revenue Agent, Internal Revenue Service, Respondents.

Nos. S 83–113, S 83–114.

United States District Court,
N.D. Indiana,
South Bend Division.

Oct. 28, 1983.

Louis E. Kroll, Helen M. Kroll, pro se.

R. Lawrence Steele, U.S. Atty., Hammond, Ind., for respondents.

## MEMORANDUM AND ORDER

SHARP, Chief Judge.

This cause is presently before the court on the Motion to Dismiss Petition to Quash Internal Revenue Summons and For an Award of Attorney's Fees and Costs of Respondents, United States of America and the Internal Revenue Service (IRS).

The facts underlying this cause of action are as follows. The IRS summonses involved were issued during an investigation of the federal tax liabilities of Louis E. Kroll and Helen M. Kroll (taxpayers). On April 16, 1982, the IRS, through its agent Donald Kempf, issued two IRS summonses to Carol Bradshaw, Audit Secretary, First National Bank in Elkhart, Indiana, for the production of documents reflecting financial transactions between the bank and each of the individual taxpayers for the calendar years 1979, 1980 and 1981. Notice of the summonses was mailed to the taxpayers on the same day by certified or registered mail. On May 14, 1982, Carol Bradshaw failed to appear as summoned as a result of a stay procured by the taxpayers pursuant to 26 U.S.C. § 7609(b).

Two additional summonses were served April 16, 1983 on Mark Kleppinger, Assistant Vice President of St. Joseph Valley Bank of Elkhart, Indiana. These summonses ordered the production of documents reflecting the financial transactions between St. Joseph Valley Bank and the taxpayers for the years 1979, 1980, 1981. Again, notices of these summonses were mailed to the taxpayers by certified or registered mail. On May 4, 1982, Mark Kleppinger failed to appear as summoned as the taxpayers had administratively stayed compliance with the summonses pursuant to 26 U.S.C. § 7609(b).

On February 8, 1983, the United States of America and Agent Kempf filed four petitions to enforce Internal Revenue summonses which were assigned by the Clerk of this court cause numbers S Misc. 83–20, 83–21, 83–22, 83–23. On February 14, 1983, an order to show cause was entered in the enforcement cases to Carol Bradshaw and First National Bank and Mark Kleppinger and Valley National Bank. On March 1, 1983, Bradshaw and First National filed a response in their respective cases indicating that they would comply with any order of the court regarding the IRS summonses. On March 9, 1983, Kleppinger and Valley National responded, stating that they would comply with any order of the court in respect to the IRS summonses.

The court's order of February 14, 1983 stated that any applicants for intervention

should file a response to the petition, "alleging specific facts in rebuttal to the Government's *prima facie* case or in support of an affirmative defense", within thirty days of the service of a copy of such order. Instead of responding in the manner set forth by the court, the taxpayers filed on March 15, 1983, these actions, S 83–113 and S 83–114, Petitions to Quash IRS Summons. On May 20, 1983, these cases were assigned to United States Magistrate Gene B. Lee pursuant to 28 U.S.C. § 636(b) for a report and recommendation. Such report and recommendation was filed pursuant to 28 U.S.C. § 636(b)(1) on August 2, 1983. The Magistrate recommended that the taxpayers' petition to quash and request for an evidentiary hearing be denied, that the government's request for an award of attorney fees and costs be denied, and that the parties be ordered to comply with the IRS summonses.

By order of the court entered on August 3, 1983, the taxpayers were given ten days within which to file any written objections to the Magistrate's Report and Recommendation. Subsequently, on August 12, 1983, taxpayers filed a brief setting forth such objections. The taxpayers contended that they are entitled to have the summonses quashed or modified for the following reasons: (1) that the IRS does not have statutory authority to issue an administrative summons of taxpayers bank records because a "Justice Department referral" is in effect with respect to taxpayers; (2) the IRS summonses were not issued in good faith; (3) the summonses infringe upon the First Amendment rights of the taxpayers and persons with whom they associate in the exercise of those rights; (4) there is reason to believe that Grand Jury materials have been disclosed to the IRS and misused in the IRS investigation of the taxpayers; (5) the IRS has not complied with the administrative procedures required for issuance of a "John Doe" summons of information identifying taxpayers customers and their transactions with those customers; and (6) taxpayers will suffer irreparable injury from the government without

due process of law if these summons are enforced. Because these actions involve identical parties, identical issues and the same IRS summonses, the court, for purposes of this memorandum and order, will consolidate cause numbers S 83–113 and S 83–114 pursuant to Federal Rule of Procedure 42(a). For reasons set forth below, this court adopts the magistrate's Report and Recommendation.

## I.

Taxpayers contend that a "Justice Department referral" is in effect with respect to themselves and other members of the National Commodity and Barter Association (NCBA), a political association of persons who advocate dissident political views concerning the tax and monetary policy of the United States Government. In support of this allegation, taxpayers have filed documents marked as Exhibits A–G which purportedly establish the existence of a criminal investigation of the taxpayers and other members of NCBA. Included in these documents are the following: (1) Exhibit A, a copy of an IRS publication entitled *Illegal Tax Protester Reference Guide* which makes reference to NCBA as an illegal tax protest organization; (2) Exhibit B, a copy of a declaration made by Gerald L. Mihlbacher, district director of Internal Revenue Service for Colorado which purportedly documents a decision reached to refer the IRS investigation of NCBA and its members to the Department of Justice; (3) Exhibit C, a copy of a letter from Thomas Clancy, Director of IRS Criminal Investigation Division to Philip Wilens, Director of Office of Enforcement Criminal Division, Department of Justice, offered to show a connection between the IRS and the Department of Justice; (4) Exhibit D, a copy of a grand jury subpoena issued to Sharon Voss, also a member of NCBA; (5) Exhibit E, a copy of a grand jury subpoena to Bruce Holman, also a member of NCBA; (6) Exhibit F, a copy of a grand jury subpoena to a member of NCBA; and (7) Exhibit G, a copy of a grand jury subpoena to

the Custodian of Records, First National Bank of Englewood, Colorado.

Pursuant to 26 U.S.C. § 7602(c)(1), no administrative summons may be issued when a Justice Department referral is in effect. Further, the Secretary may not begin enforcement action while such referral is in effect. A Justice Department referral is in effect with respect to any person if:

(i) the Secretary has recommended to the Attorney General a grand jury investigation of, or the criminal prosecution of, such person for any offense connected with the administration or enforcement of the internal revenue laws, or

(ii) any request is made under section 6103(h)(3)(B) for the disclosure of any return or return information (within the meaning of section 6103(b)) relating to such person.

26 U.S.C.A. § 7602(c)(2)(A)(i), (ii) (West Supp.1983).

In light of the record presented in this case, the court concludes that no Justice Department referral is in effect with respect to the taxpayers who initiated this action. In summons enforcement proceedings, the government must submit evidence of a *prima facie* case that the conditions exist for the issuance of a summons. *United States v. Kis,* 658 F.2d 526, 532 (7th Cir.1981), *cert. denied sub nom. Salkin v. United States,* 455 U.S. 1018, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982). The elements of the *prima facie* case that the government must present are: (1) that the investigation will be conducted pursuant to a legitimate purpose; (2) that the inquiry may be relevant to the purpose; (3) that the information sought is not already within the Commissioner's possession; and (4) that the administrative steps required by the Code have been followed. *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964). The Government ordinarily proves these four elements by affidavits of the agent or agents involved in the investigation. No more than that is necessary to make a *prima facie* case. *Kis, supra,* 658 F.2d at 536.

The Government has met the burden imposed by *Powell.* The affidavit of Donald A. Kempf, Internal Revenue Agent, is sufficient to establish each of the above enumerated elements and, thus, has established a *prima facie* case. *Kis, supra.*

Once the Government has established its *prima facie* case, the taxpayer must shoulder a heavy burden in answering the government's case. The taxpayer must answer the government's case through responsive pleadings, supported by affidavit, that allege specific facts in rebuttal. Those facts must permit at least an inference that some wrongful conduct by the government exists. Mere allegations of bad faith will not suffice, nor will legal conclusions or memoranda of law. *Kis, supra,* 658 F.2d 526 at 539. No document presented by the taxpayers establish that they themselves are the subject of any criminal investigation. Though the documents establish that there may be an investigation of some NCBA members, taxpayers have not presented specific facts from which to conclude that the investigation encompasses the taxpayers herein.

Moreover, even if the taxpayers were the subjects of a criminal investigation, the existence of a pending prosecution is not dispositive of the issue of bad faith on the part of the IRS. The government does not sacrifice its interest in unpaid taxes just because a criminal prosecution begins. *United States v. LaSalle National Bank,* 437 U.S. 298, 311–12, 98 S.Ct. 2357, 2364–65, 57 L.Ed.2d 221 (1978). It is not just an institutional commitment to recommend prosecution that renders a summons issued under § 7602 invalid; rather, it is the absence of a civil purpose for that summons. *Kis, supra,* 658 F.2d at 538–39; *United States v. Jeff-Lewis Savings & Loan Association,* 530 F.Supp. 623 (N.D.N.Y.1982). The taxpayer must prove a lack of good faith, that the government has abandoned, in the institutional sense, its pursuit of possible civil penalties. *Kis, supra,* 658 F.2d at 538, *citing, United States*

*v. Moll,* 602 F.2d 134, 178 (7th Cir.1979). In this case the taxpayers have neither alleged nor proved that the government has abandoned tax liability verification as the purpose of its investigation. No showing has been made to substantiate allegations that the IRS is acting as an information gatherer for the Justice Department, thus, intruding upon the function of the grand jury as the means by which evidence required to form the basis of a contemplated criminal charge is compulsorily produced.

Taxpayers here further contend that to obtain information identifying Louis Kroll's customers the IRS must comply with the "John Doe" summons administrative procedures of 26 U.S.C. § 7609(f). If a summons does not identify the person with respect to whose liability the summons is issued, it may be secured only after a court proceeding in which the government establishes that:

(1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,

(2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and

(3) the information sought to be obtained from the examination of the record (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

26 U.S.C.A. § 7609(f) (West Supp.1983).

In support of their argument, taxpayers cite *United States v. Thompson,* 701 F.2d 1175 (6th Cir.1983). The taxpayer in that case was one of three partners in a barter exchange. The sole issue presented was whether the IRS additionally was obliged to follow the "John Doe" procedures of 26 U.S.C. § 7609(f) in order to obtain the names of members of Thompson's barter exchange. The court held that where undisputed facts showed that at the time of issuance of an administrative summons, it is also the intent of the IRS to discover the identity of an ascertainable group of persons whose liability is at issue, the "John Doe" summons procedure must be followed with respect to the service of the summons.

However, the facts underlying this action distinguish it from *Thompson.* In *Thompson,* the IRS sought the daily transaction sheets of the Barter Systems Exchange of Nashville (BSN) recording trades between BSN and its members. In 1979, the IRS instituted a "Barter Exchange Project" to identify and to select returns in need of examination that are associated with barter exchanges. *Thompson, supra,* 701 F.2d at 1176. The investigation in *Thompson* arose as a part of the Barter Exchange Project and the "institutional posture" of the IRS as well as the "personal intent" of the agents was to target the members of the BSN once identified through the summons process. Both the agents involved in the investigation and the IRS acknowledged as much by means of oral testimony at the hearing and in briefs and oral argument. *Thompson, supra,* 701 F.2d at 1178.

▮ Such is not the situation in this case. Louis Kroll contends that his position is analogous to that of Gordon H. Thompson, respondent in the case cited above. He maintains that he, like Thompson, is a businessman with records identifying his customers who include persons targeted for identification and investigation by the IRS. However, in *Thompson,* the party to be audited was a partner of a barter exchange, an acknowledged target of an IRS investigation. The IRS openly acknowledged its intent to gather information regarding the organization and its members in that investigation. Here, Kroll produces no undisputed facts to establish that it is the intent of the IRS to identify his customers for purposes of assessing tax liability. There is no evidence to show, that in this action, there is the institutional intent on the part of the IRS to identify others whose liability is at issue. Therefore, the IRS need not have complied with the "John Doe" summons procedure of 26 U.S.C. § 7609(f).

In addition to the other arguments advanced by taxpayers, they allege that the summonses infringe upon their First

Amendment rights, more specifically, their right to engage in association for advancement of political beliefs. Taxpayers also attempt to characterize the NCBA as a minor political party. They argue that the government interest in compelling disclosure of one's political associations and beliefs is weaker in the case of minor political parties, while the threat to First Amendment values is greater.

■ While the NCBA may properly be labeled a political association, it is questionable as to whether NCBA enjoys the status of a minor political party. Assuming, *arguendo*, that the NCBA is a political party, the Supreme Court has held that the *organization* may have standing to assert that constitutional rights of its members be protected from governmentally compelled disclosure of their membership in the organization, and, that absent a countervailing governmental interest, such information may not be compelled. *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). *See generally Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); *Gibson v. Florida Investigative Committee*, 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963); *Shelton v. Tucker*, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). In this action, the records sought are those of individual taxpayers, not the organization. There have been no allegations that membership lists have been involved but only the names of those persons who associate with taxpayers. The summonses at issue in this case are not so broad in scope as to chill the associational rights of the NCBA membership.

■ Taxpayers also argue that there is reason to believe the grand jury materials have been disclosed and used in the IRS investigation. They contend that the court should quash the summons because it is "highly probable" that grand jury materials were misused by the IRS. No such showing of IRS misuse of grand jury materials has been made in this case; taxpayers' subjective allegations are not sufficient.

Taxpayers' final contention is that they will suffer irreparable injury without due process of law if the summonses are enforced without modification. Taxpayers maintain that if their clients' identities are disclosed to the IRS, the clients will terminate all business relations with the taxpayers and force them out of business. Taxpayers cite *In re Seiffert*, 446 F.Supp. 1153 (N.D.N.Y.1978) in support of the proposition that the IRS cannot inflict this injury (deprivation of property) on taxpayers without due process of law. First, the *Seiffert* case does not stand for the proposition advanced by taxpayers; the proposition espoused by taxpayers was an allegation made by the petitioners in the *Seiffert* action and not a holding of the court. Second, the injury taxpayers complain of is only speculative at this time and, therefore, provides no ground for relief in the form of modification of the summonses.

### II.

After a careful review of the magistrate's Report and Recommendation, this court adopts it in its entirety as to all remaining issues. Accordingly, and for the reasons set forth above, taxpayers' petitions to quash and request for an evidentiary hearing are DENIED and all parties herein are ordered to COMPLY with the IRS summonses.